Ray D. Hacke, OSB #173647
PACIFIC JUSTICE INSTITUTE
317 Court St. NE, Ste. 202
Salem, OR 97301
(503) 917-4409 Phone
(916) 857-6902 Facsimile
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | | |
|---|---|---|
| BRENNA RILEY, An Individual, | ) | Case No.: |
| | ) | |
| Plaintiff, | ) | **Complaint for Damages and** |
| | ) | **Declaratory Relief for Religious** |
| | ) | **Discrimination in Violation of** |
| v. | ) | **Title VII [42 U.S.C. § 2000e-2]** |
| | ) | **and ORS 659A.030(1)(a) and** |
| | ) | **Aiding and Abetting Religious** |
| ST. CHARLES HEALTH SYSTEM, | ) | **Discrimination in Violation of** |
| INC., A Public Benefit Corporation, | ) | **ORS 659A.030(1)(g)** |
| KRISTI DURR, An Individual, | ) | |
| CHRISTINE DURAN, An | ) | **JURY TRIAL REQUESTED** |
| Individual, and DOES 1-10, | ) | |
| inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff BRENNA RILEY hereby alleges as follows:

## **INTRODUCTION**

1.    On or about August 4, 2021, Defendant ST. CHARLES HEALTH

SYSTEM, INC. ("ST. CHARLES") mandated that all of its employees be

vaccinated against the SARS-CoV-2 virus ("COVID-19") by October 18, 2021, or

obtain an approved medical or religious exemption.

2.      Plaintiff, who worked for ST. CHARLES, sought an accommodation

to be exempt from this mandate based on her sincerely held religious beliefs.  ST.

CHARLES gave Plaintiff a choice: Be placed on unpaid leave – which was not a

true "accommodation," but a *de facto* suspension for asserting her right not to be

discriminated against by her employer on the basis of her religion – or be fired.

3.      ST. CHARLES ultimately terminated Plaintiff's employment.

4.      ST. CHARLES failed to offer a reasonable accommodation to

Plaintiff under both Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e *et*

*seq.*] and the Oregon Unlawful Discrimination in Employment Act [ORS

659A.030(1)(a)].

## **PARTIES**

5.      At all times relevant herein, Plaintiff BRENNA RILEY ("RILEY")

was employed by Defendant ST. CHARLES.

6.      At all times relevant herein, RILEY was an employee protected by

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.* and is a

member of a protected class based on her religion.

7.      Defendant ST. CHARLES is, and at all times relevant herein was, a

public benefit corporation headquartered in Bend, Oregon. According to ST.

CHARLES' website, "St. Charles Health System began in 2001 as Cascade Health Services when St. Charles Medical Center in Bend merged with Central Oregon District Hospital in Redmond. Today, St. Charles owns and operates medical centers in Bend, Redmond, Prineville and Madras."[1]

8.      Defendant ST. CHARLES is, and at all times relevant herein was, an employer as defined by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*

9.      Defendant KRISTI DURR ("DURR") was at all times relevant herein ST. CHARLES' Human Resources Operations Manager and one of the persons primarily responsible for making the decision to deny religious accommodations to and fire unvaccinated personnel regardless of the employee's sincerely held religious beliefs.

10.     Defendant CHRISTINE DURAN ("DURAN") was at all times relevant herein ST. CHARLES' Human Resources Business Partner one of the persons primarily responsible for making the decision to deny religious accommodations to and fire unvaccinated personnel regardless of the employee's sincerely held religious beliefs.

11.     The true names and capacities, whether individual, corporate, associate, or otherwise, of DOES 1-10, inclusive, are unknown to RILEY at this

---

[1] https://www.stcharleshealthcare.org/about-us

time, who therefore sues said Defendants by such fictitious names.  RILEY is

informed and believes and thereon allege that each of the fictitiously named

Defendants is in some way responsible for, or participated in or contributed to, the

matters and things complained of herein, and is legally responsible in some

manner.  RILEY will seek leave to amend this Complaint when the true names,

capacities, and responsibilities have been ascertained.

## **JURISDICTION**

12.    This action arises under the laws of the United States, specifically 21

U.S.C. § 360bbb-3 and 42 U.S.C. § 2000e *et seq*.  This action also arises under the

laws of the State of Oregon, specifically the Oregon Unlawful Discrimination in

Employment Act, ORS 659A.030(1)(a) and (g).

13.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§

1331, 1343, and 1367.

## **VENUE**

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2)

because a substantial part of the events or omissions giving rise to Plaintiff's claims

occurred in the County of Deschutes.

15.    This Court is authorized to grant Plaintiff's prayer for relief regarding

damages pursuant to Rule 54 of the Federal Rules of Civil Procedure and the

supplementary laws of the State of Oregon, as applicable under Fed. R. Civ. P. 69.

## **FACTUAL ALLEGATIONS**

16.    Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

17.    On or about January 5, 2020, ST. CHARLES hired RILEY as a Certified Health Environmental Technician to work at ST. CHARLES' hospital at 2500 NE Neff Road, Bend, Oregon 97701.  RILEY's duties with ST. CHARLES primarily consisted of cleaning patient rooms, bathrooms, and common areas.

18.    Prior to the issues giving rise to this case, RILEY had an exemplary employment record with ST. CHARLES.

19.    In August 2021, at the height of the COVID-19 pandemic (the "Pandemic"), Oregon's then-governor, Kate Brown ("Gov. Brown"), sought to limit the spread of COVID-19 in the state's healthcare facilities by issuing an executive order (the "Mandate") requiring healthcare workers statewide to be vaccinated against COVID-19 by October 18. *See* Or. Admin. R. 333-019-1010. However, Gov. Brown's Mandate allowed healthcare workers to seek, and the healthcare providers who employed them to grant, exemptions from the vaccination requirement.  *Id.*, subsections (3)-(4).

20.    During the COVID-19 pandemic, RILEY was committed to the well-being of co-workers, clients, staff, and patients.

21.    Throughout the COVID-19 pandemic, pursuant to ST. CHARLES protocols, RILEY took health and safety precautions to prevent herself from contracting and spreading COVID-19 to others.  These precautions included wearing disposable masks, goggles and gowns; regularly washing her hands; submitting to screenings for COVID-19 symptoms before each shift; and practicing social distancing to a distance of six feet or greater.

22.    On or about August 4, 2021, ST. CHARLES announced to employees that ST. CHARLES would be implementing a policy (the "Policy") requiring all ST. CHARLES employees to be vaccinated against COVID-19 by October 18, 2021, or to submit for and be approved of either a religious or medical exemption.

23.    RILEY is, and at all times relevant herein was, an adherent to the Christian faith.  She holds sincere religious beliefs that prevent her from receiving a COVID-19 vaccination.

24.    The religious conviction that prevents RILEY from receiving a COVID-19 vaccination falls into the category of belief that a Christian's body is a temple of the Holy Spirit.  Ingesting something that may be harmful is inconsistent with the protection and sacredness God's temple deserves.

25.    On or about September 13, 2021, in accordance with the Policy, RILEY timely submitted to ST. CHARLES via email a written religious exemption request along with the Oregon Health Authority's COVID-19 Vaccine Religious

Exception Request form, true and correct copies of which are attached hereto as
**Exhibit "A."**

26.    By submitting her COVID-19 vaccine religious accommodation
request, RILEY informed ST. CHARLES that she could not receive the mandated
COVID-19 vaccine because receiving the COVID-19 vaccine would conflict with
her sincerely held religious beliefs.

27.    On September 24, 2021, RILEY met with ST. CHARLES' uman
resources representatives, DURR and DURAN (collectively the "HR Reps"), to
discuss RILEY's religious accommodation request.

28.    During this meeting on September 24, 2021:

    a.  RILEY offered as a reasonable accommodation to the COVID-19
        vaccine to continue taking all the COVID-19 precautions that she
        had already been taking since the beginning of the pandemic:
        testing, masking, social distancing, washing hands, and screening
        for symptoms;

    b.  The HR Reps declared to RILEY that her religious exemption
        request had been denied; and

    c.  DURR stated to RILEY that she could apply for other positions but
        that RILEY's application would be denied because there were no
        positions or accommodations for any unvaccinated employees;

29.    When RILEY asked what the appeals process was, the HR Reps did not answer.

30.    Following this meeting on September 24, 2021, RILEY e-mailed the HR Reps asking for confirmation of ST. CHARLES' denial of RILEY's religious accommodation request and ST. CHARLES' decision to terminate RILEY's employment on October 17, 2021.

31.    In an e-mail dated September 24, 2021, DURAN stated to RILEY for those with approved vaccine exceptions, "we do not foresee a reasonable accommodation that would include continued work in at any of our health system sites" while at the same time inviting RILEY to apply for other vacancies with ST. CHARLES.  A true and correct copy of that e-mail is attached hereto as **Exhibit "B."**

32.    RILEY again inquired about ST. CHARLES' appeals process in an e-mail dated October 6, 2021.

33.    On or about October 7, 2021, RILEY met with her supervisors, James Bacon and Rochelle Shatka, who gave RILEY a choice: Take an unpaid leave of absence or be fired.

34.    RILEY expressed to her supervisors that she did not want to take a leave of absence and that she was being forced to take a leave of absence.

35.    In an e-mail dated October 7, 2021, DURR stated to RILEY that she could not be accommodated: "[A] reasonable accommodation should include consideration of remote work opportunities or unpaid leave time. At this time, we do not foresee a reasonable accommodation that includes continued work on-site at any of our health system facilities."  A true and correct copy of that e-mail is attached hereto as **Exhibit "C."**

36.    On or about October 17, 2021, RILEY completed her final shift at ST. CHARLES.  The following day, ST. CHARLES placed RILEY on an unpaid leave of absence.

37.    RILEY was ready, willing, and able to meet accommodation requirements such as taking health and safety precautions that she had previously taken to prevent the spread of COVID-19.  RILEY even offered to pay out-of-pocket for COVID-19 testing as an accommodation.

38.    Until the time of her mandated leave of absence, RILEY continued taking the same precautions to protect against contracting or spreading COVID-19 that she had taken prior to the implementation of ST. CHARLES' Policy.

39.    ST. CHARLES ultimately terminated RILEY's employment on February 16, 2022.

40.    RILEY timely filed a Charge of Discrimination with Oregon's Bureau of Labor and Industries ( "BOLI"), on or about August 3, 2022.

41.     On January 20, 2023, BOLI issued to RILEY a Notice of Right to File

a Civil Lawsuit.  A true and correct copy of that notice is attached hereto as

**Exhibit "D."**

42.     RILEY now timely files this complaint against ST. CHARLES.  *See*

Attached **Exhibit "E"** [a copy of a printout from the website TimeandDate.com

showing when the 90-day deadline expires].

**FIRST CAUSE OF ACTION:**
**Failure to Provide Religious Accommodation**
**Violation of Title VII of the Civil Rights Act of 1964**
**[42 U.S.C. § 2000e *et seq.*]**
**Against Defendant ST. CHARLES**

43.     RILEY refers to and hereby incorporates the foregoing paragraphs as

though fully set forth herein.

44.      Title VII of the 1964 Civil Rights Act prohibits employers from

discriminating on the basis of religion.  42 U.S.C. § 2000e-2(a)(1).

45.     For purposes of Title VII, "[t]he term 'employer' means a person

engaged in an industry affecting commerce who has fifteen or more employees for

each working day in each of twenty or more calendar weeks in the current or

preceding calendar year …"  42 U.S.C. § 2000e(b).

46.     Defendant ST. CHARLES qualifies as an employer under Title VII.

47.     The term "religion," for purposes of Title VII, "includes all aspects of

religious observance and practice, as well as belief …" 42 U.S.C. § 2000e(j).

48.     As a practicing Christian, RILEY belongs to a class of persons protected under Title VII.  42 U.S.C. § 2000e-2(a)(1).

49.     RILEY has, and at all times herein had, a bona fide religious belief that if she were to receive a COVID-19 vaccine, she would defile her body, thereby sinning against God, and would suffer the consequence of being disobedient to His guidance.

50.     RILEY's bona fide religious belief against taking the COVID-19 vaccine conflicted with her employment-related duty to receive a COVID-19 vaccine in accordance with Defendant ST. CHARLES' policy.

51.     RILEY informed her employer, Defendant ST. CHARLES, of the conflicts between her religious beliefs and the above employment-related duty.

52.     Defendant ST. CHARLES failed to accommodate RILEY and subjected RILEY to discriminatory treatment by taking the following adverse employment actions against RILEY: (1) Threatening to terminate RILEY's employment if she did not receive a COVID-19 vaccine; (2) placing RILEY on an unpaid leave of absence because she did not receive a COVID-19 vaccine; and (3) ultimately terminating RILEY's employment on or about February 16, 2022, because she did not receive the COVID-19 vaccine.

53.     Defendant ST. CHARLES failed to reasonably accommodate RILEY's sincerely held religious beliefs: RILEY's placement on an unpaid leave

of absence was not a true "accommodation," but a *de facto* suspension for asserting her right not to suffer religious discrimination at the hands of her employer.

54.    Defendant ST. CHARLES failed to make any assertion to RILEY that ST. CHARLES would incur undue hardship by accommodating her beliefs.

55.    Defendant ST. CHARLES could have and should have provided reasonable accommodations for RILEY's religious beliefs, as accommodations that would have allowed RILEY to continue working while significantly limiting the likelihood of spreading COVID-19 were available.  Such accommodations included what ST. CHARLES had required RILEY and all other staff to do since the start of the pandemic: Requiring RILEY to wear masks, gowns, and goggles; screening for symptoms; washing hands; and social distancing from fellow employees, patients, and staff when possible.

56.    Based on the foregoing, Defendant ST. CHARLES has discriminated against RILEY in violation of Title VII.

<u>SECOND CAUSE OF ACTION:</u>
**Violation of State Law Prohibiting Religious Discrimination**
**[ORS 659A.030(1)(a)]**
**Against Defendant ST. CHARLES**

57.    Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

58.    Like Title VII, ORS 659A.030(1)(a) prohibits employers from discharging individuals from employment on the basis of the employees' religion, as Defendant ST. CHARLES has done here.

59.    Because ORS 659A.030(1)(a) is modeled after Title VII, and because the analysis for religious discrimination claims under both statutes is identical [*see Hedum v. Starbucks Corp.*, 546 F. Supp. 2d 1017, 1022 (D. Or. 2008)], RILEY declines to restate the facts as set forth in her first cause of action, as those facts are already incorporated as though fully set forth herein.

60.    Under 42 U.S.C. § 2000e-7, nothing in 42 U.S.C. § 1981a(b)(3), which caps the amount of non-pecuniary and punitive damages that can be awarded to Plaintiff, "shall be deemed to exempt or relieve any person from liability, duty, penalty, or punishment provided by any present or future law of any State[.]"  In other words, an Oregon jury is free to exceed any applicable federal dollar limit in accordance with Oregon law.

61.    ORS 659A.885(3) allows for punitive damages against employers such as Defendant ST. CHARLES who violate ORS 659A.030(1)(a).  Oregon law places no cap on punitive damages.  *See Smith v. Ethicon, Inc.*, 2022 U.S. Dist. 98543 at *2 (D. Or. June 2, 2022).

62.    Based on the foregoing, in addition to violating Title VII, Defendant ST. CHARLES has violated ORS 659A.030(1)(a).

**THIRD CAUSE OF ACTION**
**Violation of ORS 659A.030(1)(g)**
**Against Defendants DURR, DURAN, and DOES 1-10**

63.    Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

64.    ORS 659A.030(1)(g) prohibits any person from aiding and abetting an employer from engaging in employment discrimination.

65.    In her role as Defendant ST. CHARLES' Human Resources Operations Manager, Defendant DURR acted in concert with, or gave substantial assistance to, ST. CHARLES to unlawfully discriminate against RILEY on account of RILEY's religion.  DURR did this knowing it was unlawful for ST. CHARLES, as RILEY's employer, to engage in religious discrimination against RILEY.

66.    In her role as Defendant ST. CHARLES' Human Resources Business Partner, Defendant DURAN acted in concert with, or gave substantial assistance to, ST. CHARLES to unlawfully discriminate against RILEY on account of RILEY's religion. DURAN did this knowing it was unlawful for ST. CHARLES, as RILEY's employer, to engage in religious discrimination against RILEY.

67.    Because Defendant ST. CHARLES carried out its religious discrimination against RILEY with the assistance of Defendants DURR and DURAN, DURR and DURAN should be held individually and personally liable

for their conduct. The same goes for any yet-to-be-identified persons whom

RILEY later learns aided and abetted the ST. CHARLES' religious discrimination

against RILEY – hence, the inclusion of DOES 1-10 as defendants in the herein

proceeding.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

### ON ALL CAUSES OF ACTION:

1.    For economic damages in an amount according to proof at trial;

2.    For non-economic damages in an amount according to proof at trial;

3.    For punitive damages in an amount according to proof at trial;

4.    For attorney's fees and costs associated with bringing and maintaining

this action in accordance with the law; and

5.    For such other and further relief as the Court may deem proper.


Dated: April 20, 2023                        PACIFIC JUSTICE INSTITUTE
                                             __/s/ RAY D. HACKE_____
                                             Ray D. Hacke
                                             Attorney for Plaintiff
                                             BRENNA RILEY

## PROOF OF SERVICE

I am employed in the County of Marion, State of Oregon.  I am over the age of eighteen and not a party to the within action; my business address is 1850 45th Ave., Suite 33, Salem, OR 97305.

On or about April 20, 2023, I served the following documents on the interested parties by placing a true copy thereof enclosed in sealed envelope(s) addressed to said parties:

**Complaint for Damages and Declaratory Relief for Religious Discrimination in Violation of Title VII [42 U.S.C. § 2000e-2] and ORS 659A.030(1)(a) and Aiding and Abetting Religious Discrimination in Violation of ORS 659A.030(1)(g)**

## PLEASE SEE ATTACHED SERVICE LIST

_____BY MAIL:  I am readily familiar with the firm's practice of collection and processing of correspondence for mailing.  Under that practice, it would be deposited with the U.S. postal service on that same date with postage thereon fully prepaid at Salem, Oregon in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

__X__BY PERSONAL SERVICE:  I caused such envelope to be delivered by hand to the office of the addressee(s).

_____(State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

__X__(Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on April 20, 2023, at Salem, Oregon.

*/s/ LAUREN PEFFERLE*
Lauren Pefferle

## **SERVICE LIST**

C.T. Corporation System
Registered Agent For Defendants
780 Commercial St. SE
Suite 100
Salem, OR 97301

# EXHIBIT "A"

**From:** Brenna Riley
**Sent:** Monday, September 13, 2021 8:24 AM
**To:** SCHS Leaves <schsleaves@stcharleshealthcare.org>
**Subject:** Religious Exemption forms


As a practicing follower of Jesus, I am a Christian who believes in the Bible, including the teachings in the New Testament. I have a Christian worldview. This perspective recognizes that faith and conscience compel an individual to submit to the proper jurisdiction within the rule of law, in this case, Divine Law. Specifically, the New Testament teaches that:

"But whoever has doubts is condemned if he eats, because the eating is not from faith. For whatever does not proceed from faith is sin" (Romans 14:23).

Know ye not that ye are the temple of God, and that the Spirit of God dwelleth in you?
If any man defile the temple of God, him shall God destroy; for the temple of God is holy, which temple ye are. …
What? know ye not that your body is the temple of the Holy Ghost which is in you, which ye have of God, and ye are not your own?

I Corinthians 3:16-17, 6:19

Accordingly I believe, pursuant to my Christian faith, that my body is a temple of the Holy Spirit. It is a God-given responsibility and requirement for me to protect the physical integrity of my body against unclean food and injections.

The broad prohibition against consuming anything that might "defile" the body, and hence the conscience, is stated again:

"Howbeit there is not in every man that knowledge: for some with conscience of the idol unto this hour eat it as a thing offered unto an idol; and their conscience being weak is defiled". (Corinthians 8:7)

There is this admonition against defiling the flesh and the spirit:

"Having therefore these promises, dearly beloved, let us cleanse ourselves from all filthiness of the flesh and spirit, perfecting holiness in the fear of God". (Corinthians 7:1)

The mandated vaccine, with its numerous additives and its mechanism for altering my body, is the equivalent of a prohibited "unclean food" that causes harm to my conscience. Vaccines to me are analogous to what non-kosher food is to orthodox Jews, and no one requires anyone in the United States to consume a substance contrary to their faith. Medical experts may assert that non-kosher food and vaccines are completely healthy, but religious faith compels certain individuals to decline their consumption. I am one of those individuals.

I cannot in good conscience receive the vaccine as it will not be "from faith" and I cannot do this "to the glory of God."

I believe this letter provides the necessary information for consideration of my request for an exemption for the Covid- 19 vaccine, or in the alternative, a reasonable accommodation to my request that would not require the injection of a Covid-19 vaccine. I am willing to wear mask and be tested regularly as an alternative. I trust that my request, which is both reasonable and which stems from deeply held religious beliefs, will be granted.

Thank you,

Brenna Riley

OFFICE OF THE DIRECTOR
Office of the State Public Health Director



# COVID-19 Vaccine Religious Exception Request Form

I am requesting an exception from the COVID-19 vaccination on the basis of a sincerely held religious belief.

| Individual's name: | Date of birth: |
|---|---|
| Brenna Riley | 10/12/1992 |
| Phone number: | |
| 541-668-2086 | |
| Employer/Organization: | Job Title/Position: |
| St. Charles medical center | Enviromental services technician |

## Please check the boxes below as appropriate and complete related questions:

[X] Receiving the COVID-19 vaccination conflicts with my religious observances, practices or beliefs as described below.

Please describe your religious belief and how it affects your ability to receive a COVID-19 vaccination

As a practicing follower of Jesus, I am a Christian who believes in the Bible, including the teachings in the New Testament. I have a Christian worldview. This perspective recognizes that faith and conscience compel an individual to submit to the proper jurisdiction within the rule of law, in this case, Divine Law.

Specifically, the New Testament teaches that:

"But whoever has doubts is condemned if he eats, because the eating is not from faith. For whatever does not proceed from faith is sin" (Romans 14:23).

(Please see attached documents of religious Exemption letter and personal letter continuation)

I certify the above information to be true and accurate and that I sincerely hold the religious beliefs described above.

OHA 3871 (8/25/2021)

| Signature: | Date: |
|---|---|
| Brenna Riley | 09/13/2021 |

Please note that if your exception request is approved, you may be required by your employer or other responsible party to take additional steps to protect you and others from contracting and spreading COVID-19. Workplaces are not required to provide this exception accommodation if doing so would pose a direct threat to the excepted individual or others in the workplace or would create an undue hardship.

**Document accessibility:** For individuals with disabilities or individuals who speak a language other than English, OHA can provide information in alternate formats such as translations, large print, or braille. Contact the Health Information Center at 1-971-673- 2411, 711 TTY or COVID19.LanguageAccess@dhsoha.state.or.us.

OHA 3871 (8/25/2021)

**Part II:  Supplemental Questions to COVID-19 Vaccine Religious Exception Request Form (Must Be Completed):**

1. How long will you need an accommodation for the identified religious observances, practices and/or beliefs?

"But whoever has doubts is condemned if he eats, because the eating is not from faith. For whatever does not proceed from faith is sin" (Romans 14:23).

2. Please identify at least two individuals we can contact for verification of your requested exemption.  These individuals can be your religious leader, fellow adherents, family, friends, or neighbors.

Chaplin Brian
Anika Stencamp
Lorna Mulkey
Becky Lacoss

3. How long have you been an adherent to the identified religious observances, practices and/or beliefs?

Since I was born and Baptized in the Holy Spirit.

4. What are your suggestions for possible accommodations?

I will continue to remain masked within the hospital, I will not come to work if I am showing any signs of any illness, I am willing to be tested regularly.

I attest that, to the best of my knowledge and belief, all information reported on this COVID-19 Vaccine Religious Exception Request Form is accurate and complete.

Signature: Brenna Riley
Date: 09/13/2021

*Falsification of information on this form could lead to discipline up to and including termination of employment.*



**Calvary Chapel**
Kaneohe

Phone: 808.262.8800
Fax: 808.262.8809
www.calvarychapelkaneohe.com
www.JDFarag.org

47-525 Kamehameha Hwy, Kaneohe, Hawaii 96744

2223*5**G50**0.382**1/1*********AUTOMIXED AADC 990
BRENNA P RILEY
825 WATT WAY APT L104
BEND OR 97701-5359

August 25, 2021

To Whom It May Concern:

I am writing on behalf of Brenna P Riley, a member of our online congregation at Calvary Chapel Kaneohe, in Hawaii, regarding their religious conviction against forced vaccines.

We do not wish to be labeled as anti-vaccine or anti-science, however, the well-documented process of vaccines developed from animal and aborted human fetal tissue has compelled us to stand by our congregants who refuse to comply with mandatory vaccinations.

We strongly support their deeply held Biblical conviction as a believer in, and follower of Jesus Christ and any of our congregants to resist the pressure for vaccinations, while at the same time seeking an alternative for their safety and the safety of others.

We are convinced that the nature of many other contaminants within vaccines should be a reason to grant exemptions to believers whose bodies are, as the Scripture states, the "temple of the Lord."

- 1 Corinthians 3:16-17 - "Don't you know that you yourselves are God's temple and that God's Spirit dwells in your midst? If anyone destroys God's temple, God will destroy that person; for God's temple is sacred, and you together are that temple."
- 2 Corinthians 7:1 - "Therefore, since we have these promises, dear friends, let us purify ourselves from everything that contaminates body and spirit, perfecting holiness out of reverence for God."

We must follow the Word of God and we also exhort others to a conscientious objection to these vaccines. Yet, our deep love and care for others makes us more determined to exercise whatever alternatives possible to ensure others' safety in each individual case.

We thank you for granting this religious exemption and as such respecting religious freedom.

Sincerely,

J.D. Farag
Senior Pastor
Calvary Chapel Kaneohe

JDF:gl

# EXHIBIT "B"

**From:** Christine Duran <cmduran@stcharleshealthcare.org>
**Sent:** Friday, September 24, 2021 4:48:40 PM
**To:** Brenna Riley <bpriley@stcharleshealthcare.org>
**Cc:** Kristi Durr <kjdurr@stcharleshealthcare.org>
**Subject:** RE: Meeting

> Good afternoon Brenna, as a recap to our conversation we wanted to thank you for providing your
> request for a religious or medical exception to the COVID 19 vaccination policy. The accommodations
> panel has carefully considered your request and evaluated your suggested accommodation along
> with the essential functions of your position. This consideration and evaluation include reference to
> the existing mandate requiring health care entities to "take reasonable steps to ensure that
> unvaccinated healthcare providers and healthcare staff are protected from contracting and spreading
> COVID-19." Realistically, this may mean that caregivers that establish entitlement to a religious or
> medical exception cannot work in direct patient-care roles or on-site where they may come in contact
> with patients or other caregivers, potentially contracting or spreading COVID-19.

> We have carefully assessed our ability to reasonably accommodate unvaccinated caregivers who
> work within our facilities in a way that would ensure their safety from infection and also protect our
> patients, visitors and other caregivers from contracting COVID-19. We have concluded that in order to
> responsibly protect the health and safety of our unvaccinated caregivers as well as other coworkers,
> patients and visitors, a reasonable accommodation should include consideration of remote work
> opportunities or unpaid leave time. While we will meet our obligation to engage in individualized
> interactive processes to address reasonable accommodations for those with approved vaccine
> exceptions, at this time we do not foresee a reasonable accommodation that would include continued
> work in at any of our health system sites.

> It is our desire to reasonably and effectively accommodate caregivers when possible. We've reviewed
> your suggested accommodation to mask and we cannot provide this particular accommodation. If you
> would like to discuss alternative accommodations, please reach out to Julie and me. This could
> include reviewing current vacancies that fit within your restrictions and qualifications or a leave of
> absence.

> If you are not interested in further interactive dialogue regarding these options, you have the
> opportunity to reconsider becoming fully vaccinated or we will accept your voluntary resignation.

**Christine M. Duran**

Human Resources Business Partner

(541) 706-6380 | (541) 706-7791 (Fax)

cmduran@stcharleshealthcare.org

**St. Charles Health System** | 2500 NE Neff Road | Bend, OR 97701

www.stcharleshealthcare.org

---

**From:** Brenna Riley <bpriley@stcharleshealthcare.org>
**Sent:** Friday, September 24, 2021 4:32 PM
**To:** Kristi Durr <kjdurr@stcharleshealthcare.org>
**Cc:** Christine Duran <cmduran@stcharleshealthcare.org>
**Subject:** Re: Meeting

Hello again Christine.
I am sending this email as a reminder per our conversation today around 12:55pm that I need in writing that
St. Charles has decided to deny my religious exemption, deny accommodations and is choosing to terminate
me against my will October 17th 2021 even though I am refusing to quit, I refuse to resign, I want to keep my
job and I am willing to work.
I will continue to check in with you.

Thank you,
Brenna riley

# EXHIBIT "C"

**From:** Kristi Durr <kjdurr@stcharleshealthcare.org>
**Sent:** Thursday, October 7, 2021 8:58 PM
**To:** Brenna Riley <bpriley@stcharleshealthcare.org>
**Cc:** Christine Duran <cmduran@stcharleshealthcare.org>; Nicole Ponder <ncponder@stcharleshealthcare.org>; Lisa Slenning <lmslenning@stcharleshealthcare.org>; James Bacon <jtbacon@stcharleshealthcare.org>; Rochelle Shatka <rshatka@stcharleshealthcare.org>
**Subject:** RE: Meeting

Hi Brenna,

Please remember that we approved your exception to the vaccination mandate required by the Governor's Order and the Oregon Health Authority. With that approval, we entered into an interactive process with you to determine effective and reasonable accommodations. We carefully assessed our ability to reasonably accommodate unvaccinated caregivers like you who work within our facilities in a way that would ensure their safety from infection and also protect our patients, visitors and other caregivers from contracting COVID-19. We concluded that in order to responsibly protect the health and safety of our unvaccinated caregivers as well as other coworkers, patients and visitors, a reasonable accommodation should include consideration of remote work opportunities or unpaid leave time. At this time, we do not foresee a reasonable accommodation that includes continued work on-site at any of our health system facilities.

It is our desire to reasonably and effectively accommodate caregivers such as you when possible. We previously reviewed your suggested accommodation to mask, wear additional PPE, or undertake regular testing, and have reviewed those suggestions again with your request for an "appeal" of that decision. We determined then, and have determined now, that those particular accommodations are not reasonable or effective to meet the mandated vaccination requirement and meet our obligations to provide a safe work and patient care environment in light of the COVID pandemic. If you would like to discuss alternative accommodations such as a transfer to a vacant and alternative position that meets your qualifications and as an unvaccinated caregiver, or discuss an unpaid leave of absence, please reach out to Christine and me.

Thank you,

Kristi Durr, CPDM
Human Resources Operations Manager
kjdurr@stcharleshealthcare.org
541.516.3898

St. Charles Health System
2500 NE Neff Road | Bend OR 97701

**From:** Brenna Riley <bpriley@stcharleshealthcare.org>
**Sent:** Wednesday, October 6, 2021 12:53 PM
**To:** Kristi Durr <kjdurr@stcharleshealthcare.org>
**Subject:** Re: Meeting

What is your appeals process?

-Brenna

# EXHIBIT "D"



January 20, 2023

BRENNA RILEY
825 NE WATT WAY #L-104
BEND, OR 97701

RE:   Complainant:   Brenna Riley
       Respondent:   St. Charles Health Systems, Inc.
       Case #:       STEMRG220803-71184

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division has been dismissed because the Division did not find sufficient evidence to continue our investigation. This is the Bureau's final determination. If you wish to pursue your claim(s) further, you may wish to consult an attorney regarding your right to file a civil suit.

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. ***Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation</u>.***

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a copy.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

jl

**Date of Mailing**: January 20, 2023

cc:    Ray D Hacke, Complainant's Attorney
       Caroline Hoffman Janzen, Complainant's Attorney

# EXHIBIT "E"

APR 2

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

**Count Days**   **Add Days**   **Workdays**   **Add Workdays**   **Weekday**   **Week №**

From **Friday, January 20, 2023**
Added 90 days

## Result: Thursday, April 20, 2023

### Calendar showing period from January 20, 2023 to April 20, 2023

| **January 2023** 11 days added | | | | | | | | **February 2023** 28 days added | | | | | | | | **March 2023** 31 days added | | | | | | | | **April 2023** 20 days added | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sun | Mon | Tue | Wed | Thu | Fri | Sat | | Sun | Mon | Tue | Wed | Thu | Fri | Sat | | Sun | Mon | Tue | Wed | Thu | Fri | Sat | | Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| 1 | 2 | 3 | 4 | 5 | 6 | 7 | | | | | 1 | 2 | 3 | 4 | | | | | 1 | 2 | 3 | 4 | | | | | | | | 1 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 | | 5 | 6 | 7 | 8 | 9 | 10 | 11 | | 5 | 6 | 7 | 8 | 9 | 10 | 11 | | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 | | 12 | 13 | 14 | 15 | 16 | 17 | 18 | | 12 | 13 | 14 | 15 | 16 | 17 | 18 | | 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 | | 19 | 20 | 21 | 22 | 23 | 24 | 25 | | 19 | 20 | 21 | 22 | 23 | 24 | 25 | | 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 29 | 30 | 31 | | | | | | 26 | 27 | 28 | | | | | | 26 | 27 | 28 | 29 | 30 | 31 | | | 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| | | | | | | | | | | | | | | | | | | | | | | | | 30 | | | | | | |

☐ = Start date (Jan 20, 2023)   ☐ = Final result date (Apr 20, 2023)



**Time & Date Calculator App for iOS**

See how long remains before a deadline or exactly when those 30 days are up.



© Time and Date AS 1995–2023